**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| PLASTERERS AND CEMENT MASONS LOCAL 40 PENSION FUND, ET. AL.<br><br>Plaintiffs,<br><br>v.<br><br>ROYAL DRYWALL & CONSTRUCTION CO., INC.<br><br>Defendant. | : | C.A. No. 04-84L |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

NOW COME Plaintiffs Plasterers and Cement Masons Local 40 Pension Fund, et. al., through their attorneys, and respectfully move this Court pursuant to Fed. R. Civ. P. 56 to render judgment in their favor in the amount of $306,236.69 as there is no genuine issue as to any material fact and Plaintiffs are entitled to judgment as a matter of law. In support thereof, Plaintiffs offer the accompanying Memorandum of Law and Rule 56.1 Statement of Undisputed Facts.

Respectfully Submitted

PLAINTIFFS

By their Attorney,

Elizabeth Wiens, Esq. #6827
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingstown, RI 02852
Tel. (401)294-4700
Fax. (401)294-4702

CERTIFICATION

I hereby certify that a true copy of the within document was sent, postage pre-paid, to the following parties of record on the 21 day of June, 2005.

Linn F. Freedman, Esq.
Nixon Peabody LLP,
1 Citizens Plaza, 7th Floor
Providence, Rhode Island 02903

John E. Bulman
Little, Medieros, Kinder, Bulman & Whitney
72 Pine St., 5th Floor
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PLASTERERS AND CEMENT MASONS LOCAL 40 PENSION FUND, ET. AL.<br><br>Plaintiffs,<br><br>v.<br><br>ROYAL DRYWALL & CONSTRUCTION CO., INC.<br><br>Defendant. | C.A. No. 04-84L |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**Introduction**

On or about March 10, 2004, Plaintiffs Plasterers and Cement Masons Local 40 Pension Fund, et. al. commenced this action against Defendant Royal Drywall & Construction Co., Inc. to collect delinquent contributions owed to employee benefit and pension plans pursuant to Sections 502 and 514 of the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132 and §1145. Contrary to its contractual and statutory obligations, Defendant has failed to make timely contributions to Plaintiffs Plasterers and Cement Masons Local 40 Pension Fund ("Pension Fund"), Plasterers and Cement Masons Local 40 Annuity Fund ("Annuity Fund"), Plasterers and Cement Masons Local 40

Health and Welfare Fund ("Health Fund"), Plasterers and Cement Masons Local 40 Apprenticeship Fund ("Apprenticeship Fund"), and Plasterers and Cement Masons Local 40 Industry Advancement Fund ("Partnership Fund") for the period of July, 2003 through December, 2003. Defendant has also failed to remit dues to Plasterers and Cement Masons Local 40 ("Local 40") for the period of July, 2003 through December, 2003, in violation of the LMRA, 29 U.S.C. § 185 and the Rhode Island Payment of Wages statute, R.I.G.L. §§ 28-14-3 and 28-14-3.1.

**Argument**

There exist no material facts in dispute here, and the evidence proves that Plaintiffs are entitled to judgment as a matter of law. Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A party opposing summary judgment must show "that a trialworthy issue exists" and "must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). "[A] party opposing a

properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Because every piece of evidence in this case supports Plaintiffs, and Defendant has produced nothing to contradict Plaintiffs' evidence, Plaintiffs' Motion for Summary Judgment must be granted.

## I. DEFENDANT HAS VIOLATED 29 U.S.C. § 1145

There is no dispute that Defendant has failed to timely make contributions to Plaintiffs Pension Fund, Annuity Fund, Apprenticeship Fund, Health Fund and Advancement Fund in accordance with the collective bargaining agreements ("CBA") and trust agreements. See Statement of Undisputed Facts. There is also no dispute that, in failing to make timely contributions, Defendant has also violated federal law. Section 1145 of ERISA provides:

> Every employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. §1145.

Section 1145 was enacted in 1980 to "create a federal right of action independent of the contract on which the duty to contribute is based." Malden Mills v. ILGWU Nat. Retirement Fund, 766 F. Supp. 1202, 1215 (D. Mass. 1991). Indeed, "Congress enacted ERISA in part because many employees were being deprived of anticipated benefits, which not only reduced the financial resources of individual employees and their dependents but also undermined the stability of industrial relations generally." Alman v. Danin, 801 F.2d 1, 3 (1st Cir. 1986), citing 29 U.S.C. §1001 [1982] (statement of congressional findings and declaration of policy); H. Rep. No. 807, 93d. Cong. 2d Sess., *reprinted* in 1974 U.S. Code cong. & Ad. News 4670, 4676. Congress also vested Fund trustees with a fiduciary obligation to "prevent participant employers from gaining even temporary use of assets to which the plan is entitled... [by] assuring full and prompt collection of contributions owed to a plan." Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 572-73 (citation and footnote omitted).

Plaintiffs Pension Fund and Annuity Fund are employee pension funds within the meaning of ERISA, 29 U.S.C. §1002(2). Plaintiffs Apprenticeship Fund, Health Fund, and Partnership Fund are employee welfare benefit plans within

the meaning of ERISA, 29 U.S.C. §1002(1). Accordingly, Defendant's failure to make contributions to the aforementioned ERISA funds violates not only the language but the spirit of ERISA.

**II. DEFENDANT HAS VIOLATED 29 U.S.C. §185**

There is no dispute that Defendant has failed to remit the dues that were deducted from covered employees' paychecks during the period July, 2003 through December, 2003 to District Council No. 11. See Statement of Undisputed Facts. There is also no dispute that the aforementioned failures constitute a violation of the parties' CBA. See Statement of Undisputed Facts. Pursuant to 29 U.S.C. §185(a), violation of a contract between an employer and a labor organization constitutes a violation of the LMRA. Accordingly, because Defendant has offered no cognizable defense to its violation of the LMRA, Plaintiffs' Motion must be granted.

**III. DEFENDANT HAS VIOLATED R.I.G.L. § 28-14-3 and § 28-14-3.1**

There is no dispute that Defendant has failed to remit the dues that were deducted from covered employees' paychecks during the period July, 2003 through December, 2003 to District Council No. 11. See Statement of Undisputed Facts. R.I. Gen. Laws § 28-14-3 provides that,

whenever any employer provides for a payroll deduction for any purpose, the employer shall transfer those funds deducted from its employees' payroll to the appropriate person, agency, partnership, or corporation entitled to the money deducted, within twenty-one (21) days. Defendant has offered no cognizable defense to its violation of Rhode Island law.

**IV. PLAINTIFFS ARE ENTITLED TO $306,236.69**

**A. Plaintiffs ERISA Funds are Entitled to $126,348.61**

In an action where it is determined that the employer has failed to make the agreed to contributions, certain remedies are mandatory under ERISA. See Malden Mills v. ILGWU Nat. Retirement Fund, 780 F. Supp. 668, 671 (D. Mass 1991). Section 1132 (g)(2) mandates as follows:

> In any action under this title by fiduciary for or on behalf of a Plan to enforce §1145 in which a judgment in favor of the Plan is awarded, the Court shall
> award the Plan --
> (A) the unpaid contributions
> (B) the interest on the unpaid contributions
> (C) an amount equal to the greater of --
> (i) interest on unpaid contributions or
> (ii) liquidated damages provided for under the Plan in an amount not in excess of 20% (or such higher percentages as may be permitted under Federal or State law) of the amount determined by the Court under (A),

> (D) reasonable attorney's fees and the cost of action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the Court deems appropriate.

29.U.S.C. §1132 (g)(2).

Section 1132(g)(2) awards mandatory relief. There is no discretion to be exercised in determining what relief is to be awarded.

**1. Unpaid contributions**

Defendant owes $84,297.60 in unpaid contributions to the Pension Fund, Annuity Fund, Health Fund, Apprenticeship Fund, and Partnership Fund. See Summary of Claim, Exhibit 3. Plaintiffs' calculations as to the number of hours worked are based on remittance reports submitted by Defendant. Exhibit 4. Defendant has produced no records that show Plaintiffs' calculation as to the number of hours worked by Defendant's employees is incorrect; therefore, Plaintiffs' calculation as to the number of hours worked by those employees is conclusive. See Architectural Iron Workers Local No. 63 Welfare Fund v. Brown's Guide Rail & Barrier, 1994 U.S. Dist. LEXIS 12214 (N.D.Ill. 1994). See also Combs v. King, 764 F.2d 818 (11th Cir. 1985) (Pursuant to 29 U.S.C. § 1059(a)(1) an employer has a duty to keep proper records for the purpose of verifying its reporting practices. Thus, once the trust produces evidence raising

questions about the employer's records under ERISA, the burden of disproving the trustee's estimate due to failure to keep adequate records shifts to the employer.); Brick Masons Pension Trust v. Indus. Fence & Supply, Inc., 839 F.2d 1333, 1337-38 (9th Cir. 1988) (same). Defendant's mere assertions that it did not fail to pay sufficient contributions is not sufficient to defeat Plaintiffs' Motion for Summary Judgment. "The nonmovant is required to go beyond the pleadings and conclusory statements, and support his contentions with proper documentary evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). There is also no dispute about the proper rate. See Statement of Undisputed Facts. Thus, because there is no dispute about the amount of unpaid contributions, Plaintiffs' are entitled to $84,297.60.

**2. Interest**

Plaintiffs are entitled to $8,606.64 in interest. Pursuant to section 1132, the Court is specifically directed to apply either the interest rate provided within the benefit plan, or, if none is so prescribed, the applicable rate under 26 U.S.C. § 6621. See United Assn. of Journeymen, Local 276 v. Babbit & Simmons, Inc., 1986 U.S. Dist. LEXIS 23890 (D. Mass. 1986). The Trust Agreement provides that interest shall be charged at an

annual rate equal to the annual prime rate charged by Rhode Island Hospital Trust National Bank (which is now Bank of American). The interest rate for the applicable time period is 4 percent per year. Accordingly, the interest owed is $8,635.75.

### 3. Liquidated Damages or Double Interest

Pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an amount equal to the greater of 1) interest on the unpaid contributions or 2) liquidated damages provided under the plan, not to exceed 20%. The interest on the unpaid contributions is $8,635.75. The Trust Agreement provides for liquidated damages in the amount of one percent twenty percent of the unpaid contributions. The award of the greater of the two figures is mandated by the statute. United Assn. of Journeymen, Local 276 v. Babbit & Simmons, Inc., 1986 U.S. Dist. LEXIS 23890, 6-7 (D. Mass. 1986).

The damages provided for in the Trust Agreement are greater than the interest on the unpaid contributions. Accordingly, Plaintiffs are entitled to a penalty of $26,567.76.

### 4. Attorney's Fees and Costs

An award of attorney's fees is a mandatory remedy under section 1132. Here, Plaintiffs attorneys' fees

through 6/3/05 are $6,657.50 and costs are in the amount of $190.00.

**B. Defendant owes Plaintiff Local 40 $179,888.07**

Defendant owes Local 40 monies that it deducted from the paychecks of covered employees in the amount of $13,337.08. Rhode Island law provides that an interest rate of "twelve percent (12%) per annum…be included in the judgment entered [in a civil action.]" R.I. Gen. Laws § 9-21-10. Accordingly, Defendant owes Plaintiff Local 40 $2,600.89 in interest. See Exhibit 3.

R.I. Gen. Laws § 28-14-3.1 provides that, any employer who violated § 28-14-3 shall be liable for an additional penalty in the amount of fifty dollars ($ 50.00) for each day beyond the thirty (30) day period during which he or she fails to transfer the funds it deducted from its employees' paychecks. Penalties in accordance with the aforementioned statutes are in the amount of $163,950.00. Accordingly, the total amount owed to Local 40 on behalf of its members is $179,888.07.

**Conclusion**

For the all of the foregoing reasons, Plaintiffs are entitled to the following damages:

1) ERISA Contributions for the period July 2003 through December 2003 in the amount of $84,297.60.

2) Interest on ERISA contributions in the amount of $8,635.75.

3) Liquidated damages on ERISA contributions in the amount of $26,567.76.

4) Dues (with interest and penalties) in the amount of $179,888.07.

5) Attorney fees through June 3, 2005 in the amount of $6,657.50.

7) Costs in the amount of $190.00.

Plaintiffs respectfully request that judgment be entered against Defendant in the amount of $306,236.69.

Respectfully Submitted

PLAINTIFFS

By their Attorney,

Elizabeth Wiens, Esq. #6827
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingstown, RI 02852
Tel. (401)294-4700
Fax. (401)294-4702

CERTIFICATION

I hereby certify that a true copy of the within document was sent, postage pre-paid, to the following parties of record on the 21 day of June, 2005.

Linn F. Freedman, Esq.
Nixon Peabody LLP,
1 Citizens Plaza, 7th Floor
Providence, Rhode Island 02903

John E. Bulman
Little, Medieros, Kinder, Bulman & Whitney
72 Pine St., 5th Floor
Providence, RI 02903

# EXHIBIT 1

# AGREEMENT

**Between the**

**CONTRACTING PLASTERERS
OF RHODE ISLAND**

**And the**

**OPERATIVE PLASTERERS AND
CEMENT MASONS INTERNATIONAL
ASSOCIATION, LOCAL 40**

**JUNE 4, 2001 – JUNE 6, 2004**



02/24/2005 03:32 4019431894 PAGE 01

## AGREEMENT

Made this 4th day of June, 2001, by and between the Contracting Plasterers of Rhode Island operating in Providence, Rhode Island, and vicinity, of the first part, hereinafter called the Employers and Local 40 of the OPERATIVE PLASTERERS AND CEMENT MASONS INTERNATIONAL ASSOCIATION, of the second part, hereinafter called the UNION.

### ARTICLE I

**Recognition**

The object of this Agreement is to maintain just and equitable treatment in their relations with each other, to promote steadiness of employment in the Plastering trade, to promote the settlement of labor disputes and to prevent strikes and lockouts, and to insure the public at large the maintenance of a high standard of work in the plastering industry. The Contractors recognize the Union representing all its Plasterer employees in the entire state of Rhode Island so long as these territories continue to be in the territorial jurisdiction of the Union:

### ARTICLE II

**Hiring and Employment System**

1. The Union agrees that at all times the Employers shall be supplied with first class workmen to the extent of their requirements and undertake to keep such men supplied as required.

2. The Union agrees and undertakes to enforce at all times to the fullest extent the Provisions of its Constitution and By-Laws, requiring all work to be done by its members to be left and finished in a thoroughly workmanlike manner, and both parties agree to see to it that its members perform their work in accordance with the specifications set forth in the Union's Constitution.

3. The Employers consent to and adopt all the Working Rules of the Union as at present existing and agree to conform to the same. It is agreed by the Union that in the event of a strike, the Contracting Plasterers operating in Providence, Rhode Island, and vicinity must be notified within twenty-four (24) hours.

4 It is the good faith intention of the parties hereto that by the execution of this Agreement, industrial peace shall be brought about, and that the Union and the Employer shall cooperate to the end that work may be done efficiently and without interruption.

If any difference of opinion or dispute should arise between the parties as to the interpretation or application of this Agreement, a complaint shall be made by the aggrieved party. In each case, the first attempt at settlement shall be made between the business representative of the local Union and the Employer or its representative.

Disputes which cannot be adjusted between the Employer and the local Union within forty-eight (48) hours after they arise, may be referred to arbitration by the local Union.

Arbitration Procedure: Both parties to this Agreement agree to settle all disputes except as otherwise provided herein, through an arbitration board composed of two (2) members of each side, four (4) members in all. These four (4) members shall then select an impartial arbitrator from the American Arbitration Association. The arbitrator shall have power to address violation, breach, and/or a proper remedy, but shall not have the power to amend, add to or alter the provisions of this Agreement, and his decision will be final and binding on both sides. The cost of the arbitration shall be borne equally by both parties.

Nothing contained herein shall require a local Union to process any local Union or Employee grievance, which, in its opinion would be without merit, and no employee shall have the right to arbitrate his grievance should the Union deem it without merit.

5. It is agreed between the Employer and the Union that all Employers shall carry Workmen's Compensation Insurance. The Employer hereby states that he is insured as dictated by state law.

6. Any Journeyman Plasterer starting in the Plastering contracting business must first resign from the OP&CMIA. The Employer may not take the place of any Employee or perform work usually performed by his Employees, except in an emergency. The state of the emergency will be defined by the Business Agent.

7. In the case of corporations all officers shall be identified, also all shareholders. Before any new contractor is allowed to go into business, unless he be a member of Local 40, the contracting plasterers will be notified.

8. The foreman shall be the agent of his Employer and the Union recognizes the right of the Employer to delegate to his foreman the right to employ or discharge any or all Employees subject to the provisions of his Agreement It shall be the function of the foreman to tell the workers what to do, how to do it, and to see that the work is properly performed. He shall be responsible for the placing of men, assigning their tasks, selecting proper materials and tools, maintaining safe working conditions and planning and effecting efficient execution of the work.

9. Journeymen and Apprentices shall be taken on during the terms of this Agreement with the mutual consent of both parties.

10. Subject to applicable law, all present Employees who are members of the Union and all Employees who become members of the Union after the execution of this Agreement shall, as a condition of employment maintain their membership in good standing in the Union throughout the life of this Agreement.

11. There shall be no discrimination against any employee by reason of race, creed, color, sex, age, or national origin. The Employer, the Union, and the Employees shall abide by the Federal Williams-Steiger Occupational Safety and Health Act, other applicable safety regulations of Rhode Island and all goals of the Equal Employment Opportunity Commission. There shall be no discrimination against any work person who has a physical or mental handicap or veterans of protected status, providing the Employee can perform the work.

All reference to Employees in this Agreement designates both sexes, and wherever the male gender is used, it shall be construed to include male and female Employees.

12 It is understood and agreed that any clause of stipulation in this Agreement found to be in violation of Federal, State or Municipal laws, shall be unenforceable and shall not affect the validity of the remaining conditions in this Agreement, which conditions shall remain in full force and effect.

13 On each job the Business Agent may appoint one of the Plasterers that is employed by the Contractor as a working Shop Steward. The Steward must be a Plasterer and a member in good standing of Local 40.

14. Each Local union must test the Qualifications and mechanical ability of each applicant for membership in the Local and the International Association. To this end Local Union shall appoint committees to investigate the abilities and qualifications of each applicant. Upon a determination that the applicant is qualified, the applicant shall be placed on the rolls of the Local Union and International Association, provided, however, that the applicant must first take or sign the oath of obligation.

15. There shall be no more than a one-to-one ratio of Local Plasterers to out-of-town Plasterers. A Plasterer working in Local 40's jurisdiction shall not be a member of another trade.

16. All Plasterers of the Union, on a voluntary basis will be asked to attend and satisfactorily complete a certified blue print reading course. All new members will be required to take the course.

## ARTICLE III

### Apprentice Program

1. Each Employer shall employ a ratio of one (1) Apprentice to four (4) Journeymen on the job when indentured Apprentices are available and assigned to the Employer by the Union.

2. Wages of Apprentices who must be indentured to the Union or a Joint Apprenticeship Council under the provision of a program agreed to by the parties and approved by the Rhode Island State Apprenticeship Council and/or the Bureau of Apprenticeship and training of the United States Department of Labor shall be as follows:

3.
1st 6 months 750 hours – 45%
2nd 6 months 750 hours – 50%
3rd 6 months 750 hours – 55%
4th 6 months 750 hours – 60%
5th 6 months 750 hours – 75%
6th 6 months 750 hours – 85%
7th 6 months 750 hours – 90%
8th 6 months 750 hours – 95%

4. All contributions for Health and Welfare and Pension benefits for the Apprentice shall be the same as the Journeyman. The Annuity benefit will be paid beginning with the 2 and1/2 year and at the same percentage of the wages.

## ARTICLE IV

### Wages and Travel Expenses

During the terms of this Agreement, the rate of wages for Journeymen Plasterers shall be as follows:

| | | |
|---|---|---|
| June 4, 2001 | $22.90 + $1.25 to $24.15 | |
| January 6, 2002 | $1.25 | (to be allocated) |
| June 2, 2002 | $2.00 | (to be allocated) |
| June 1, 2003 | $1.50 | (to be allocated) |

1. Any of the above amounts may be added to fringes at Union option.

2. All Plasterers shall be paid weekly and in no event shall more than two (2) days pay be held back in any one week. Wages shall be paid during working hours. Plasterers not paid

on the job during working hours shall report at the office for collection of pay during regular working hours. Should a Plasterer be laid off, he shall be paid in full at that time.

3. Eight (8) hours shall constitute a regular day's work and shall be performed between the hours of 7:00 a.m. and 5:30 p.m. A lunch period of thirty (30) minutes shall be taken at the time each day that substantially all trades on the job are scheduled for a lunch break.

4. Work performed over the eight (8) hours regular workday will be paid at one and one-half (1-1/2) times the regular working rate for the first two (2) hours. Any work performed after two (2) hours will be paid at double the regular working rate.

   Saturday work will be paid at one and one-half (1-1/2) times the regular working rate for eight (8) hours regular work. Any time after the eight (8) regular working hours will be paid at double the regular working rate. Sundays and Holidays will be paid at double the regular working rate.

5. The Contractors agree to deduct the amount of One Dollar and Forty Cents ($1.40) per hour for dues deduction from the weekly pay of each Employee who authorizes such deduction in writing.

6. The rate of pay for Foreman shall be One Dollar ($1.00) per hour over the wage rate for the Journeyman. The Contractor will assign a Plasterer as a Foreman when he employs over two (2) Plasterers on the same job. When the Foreman oversees more than six (6) Plasterers, he will then be paid at the rate of Two Dollars ($2.00) per hour over the wage rate.

7. The Employers shall be required to pay carfare individually as follows:

| | |
|---|---|
| 0 to 25 miles - | Free |
| Over 25 miles - | $5.00 within the state of Rhode Island<br>As outlined in Article I |

   Mileage shall be determined from the Providence City Hall.

8. Plastering shall consist of the following work procedures and installation of the following materials:

   The installation of exterior or interior plastering, plain and ornamental, when done with stucco, cement, lime mortars, and gypsum products or patent materials; artificial marble work, when applied in plastic form; composition work in all its branches; the covering of all walls, ceiling, soffits, piers, columns or any part of a construction of any sort when covered with any plastic materials, in the usual methods of plastering, the casting and sticking of all ornaments of plaster or plastic compositions, the cutting and filling of cracks.



02/24/2005 03:32 4019431894 PAGE 06

All cornices, Molding , coves, and bull nose run in place on rods and white mortar screeds and with a regular mold, and all substitutes of any kind, when applied in plastic form with a trowel, is the work of the Plasterer.

9. The spraying of all cementitious fireproofing and acoustical material shall be the work of the Plasterer.

10. During the morning working hours and afternoon working hours, at a time scheduled by the Contractor, an Employee of the Contractor shall obtain coffee, provided it is readily available at the jobsite, for each Plasterer who desires it at his or her own expense. Break will be taken at immediate vicinity of work.

11. The sanding and fabricating of Dry Vit or similar material shall be the work of the Plasterer.

12. All surfaces to be plastered shall be prepared by the Plasterer when such surfaces require a bonding agent.

13. All interior and exterior plastering of Portland Cement, stucco, imitation stone or any other patent or plastics and all plastic forms of substitute materials.

14. The making of all molds for plaster model making, finishing plaster models, preparing all models for casting and casting of same shall be the work of the Plasterer.

15. The application of all EIFS Systems including Styrofoam, fiberglass mats and finish shall be the work of the Plasterer.

16. All work performed outside the regular hours and on Saturdays, Sundays, New Years Day, Thanksgiving, Christmas, Memorial Day, Fourth of July, Victory Day, Columbus Day, Armistice Day, or any other Holiday authorized by the State of Rhode Island shall be classified as overtime and shall be paid for as is specified in the Agreement. No work on Labor Day under any circumstances. No work shall be allowed on Saturdays or Sundays without the permission from the Business Agent or President.

17. The preparation and scratching of all walls and ceilings when finished with terrazzo or tile shall be the work of the Plasterer, except under three (3) bathrooms, vestibules and small halls in private residences shall be plastered by the tile setter.

18. On all jobs where temporary heating equipment is used, all smoke and exhaust gases shall be piped to the outside of the building. All mixers shall be piped to the outside of the building.

19. A first aid kit shall be maintained on every job and it shall also contain an eye cup, eye wash, eye salve or oil, gauze, absorbent cotton, eye patch and sanitary swabs.

20. When two (2) or more shifts are used, they shall continue for at least three (3) consecutive workdays unless the Contractor is prevented from working on such days or any portion thereof because of conditions beyond his control, including weather conditions. Shift work, that is, second or third shift, shall work only in multiples of three (3) working days.

21. Pay for shift work:

| | |
|---|---|
| First shift | Eight (8) hours worked, Eight (8) hours pay. |
| Second shift | Seven and a half (7-1/2) hours worked, Eight (8) hours pay. |
| Third shift | Seven (7) hours worked, Eight (8) hours pay. |

When working on Saturdays or Holidays, all shifts shall work at rate of pay as in Article IV, No.4.
If there is only one shift then all hours will be seven hours worked for eight hours pay.

## ARTICLE V

### Health and Welfare Fund

1. The Contractors agree to pay Five Dollars ($5.00) per hour worked by each Employee covered by the Terms of this Agreement to a Welfare Fund, known as "Providence Plasterers and Cement Masons Local 40 Health and Welfare Fund" Said monies shall be paid into the Fund not later than the twentieth day of each and every month for hours worked by said Employees up to the end of the last complete payroll period of the preceding calendar month. The trust agreement creating the Fund at all times shall conform to the provisions of the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the State of Rhode Island. The fund will be used to purchase accident and sickness disability insurance and hospitalization, medical and surgical benefits and/or other welfare benefits of a similar nature for said Employees as provided in said trust agreement.

2. Contractors that do not pay benefits by the 20th of following month that the employee worked shall be a Delinquent Contractor. Delinquent contractors shall bear the cost for all attorney's fees, sheriff's fees, accounting, court cost and any other cost involved to collect delinquent payments from an Employer delinquent beyond fifty (50) days following a procedure described below.

   A. A letter from the fund's office to the Employer and the Business Agent.
   B. A call to the Employer from the Business Agent.
   C. A call to the Employer from the Business Agent stating that the men could be removed.
   D. The Union must implement the above steps over a thirty (30) day period from the initial twenty (20) day grace period; i.e., any legal fees or costs

incurred in the collection of said delinquent funds will become the responsibility of the offending Employer on the fifty-first (51st) day.

## ARTICLE VI

### Pension Fund

1. The Contractors agree to pay Three Dollars ($3.00) per hour worked by each Employee covered by the terms of this Agreement to a Pension Fund. The foregoing sum will be paid into the Fund not later than the twentieth day of each and every month for hours worked by Employees up to the end of the last complete payroll period of the preceding calendar month.

2. The plan will be administered by a Board of Trustees, one-half of whose members shall be selected by the Union and the other half by the Contractors, under the terms of an Agreement and Declaration of Trust satisfactory to both parties. The Agreement and Declaration of Trust and any pension plan adopted pursuant thereto shall conform to applicable laws of the United States and the State of Rhode Island and shall be subject to approval by the Internal Revenue Service as a "qualified" plan under Internal Revenue Code Section 401 (1), et seq., to the end that contributions by the Contractors shall at all times be deductible as an ordinary expense of doing business.

3. Contractors that do not pay benefits by the 20th of the following month that the employee worked shall be a Delinquent Contractor. Delinquent Contractors shall bear the cost for all attorney's fees, sheriff's fees, accounting, court cost and any other cost involved to collect delinquent payments from an Employer delinquent beyond fifty (50) days following a procedure described below.

    A. A letter from the fund's office to the Employer and the Business Agent.
    B. A call from the Business Agent.
    C. A call to the Employer from the Business Agent stating that men could be removed.
    D. The Union must implement the above steps over a thirty (30) day period from the initial twenty (20) day grace period; i.e., any legal fees or costs incurred in the collection of said delinquent funds will become the responsibility of the offending Employer on the fifty-first (51st) day.

## ARTICLE VII

### Annuity Fund

1. The Contractor agrees to pay Two Dollars and Seventy Cents ($2.70) per hour

worked by each Employee covered by the terms of their Agreement, effective May 31, 1992, to the Operative Plasterers and Cement Masons International Association, Local 40, Annuity Fund (the "Annuity Fund"). The foregoing sum will be paid into the Annuity Fund not later than the twentieth day of each and every month for hours worked by Employees up to the end of the last complete payroll period of the preceding calendar month.

2. The Annuity Fund will be administered by the Board of Trustees, one-half of whose members shall be selected by the Union and the other one-half by the Contractors, under the terms of an Agreement and Declaration of Trust satisfactory to both parties. The Agreement and Declaration of Trust and the Annuity Fund document adopted pursuant thereto are intended to conform to applicable laws of the United States and the State of Rhode Island and shall be subject to approval by the Internal Revenue Service as a "qualified plan" under IRS Code Section 401 (a), et seq., to the end that contributions by the Contractors shall at all times be deductible as an ordinary expense of doing business.

3. Contractors that do not pay benefits by the 20th of the following month that the employee worked shall be a Delinquent contractor. Delinquent Contractors shall bear the cost for all attorney's fees, sheriff's fees, accounting, court cost and any other cost involved to collect delinquent payments from an Employer delinquent beyond fifty (50) days following a procedure described below.

   A. A letter from the fund's office to the employer and the Business Agent.
   B. A call to the Employer from the Business Agent.
   C. A call to the Employer from the Business Agent stating that the men could be removed.
   D. The Union must implement the above steps over a thirty (30) day period from the initial twenty (20) day grace period; i.e., any legal fees or costs incurred in the collection of said delinquent funds will become the responsibility of the offending Employer on the fifty-first (51st) day.

## ARTICLE VIII

## <u>Apprenticeship Fund</u>

1. Effective May 30, 1994, the Contractors agree to pay Fifteen Cents ($.15) per hour worked by each Employee covered by the Terms of this Agreement to the Operative Plasterers and Cement Masons International Association, Local 40 Apprenticeship and Training Fund. The contributions specified herein shall be allocated from the increase in the rate of wages effective May 30, 1994, as set forth in Article IV hereof. The foregoing sum will be paid into the Apprenticeship Fund not later than the 20th day of each and every month for hours worked by Employees up to the end of the last complete payroll period of the preceding calendar month.

2. The Apprenticeship Fund will be administered by the Board of Trustees, one-half of whose members shall be selected by the Union and the other one-half by the Contractors, under the terms of an Agreement and Declaration of Trust satisfactory to both parties. The Agreement and Declaration of Trust and any Apprenticeship Fund documents adopted pursuant thereto are intended to conform to applicable laws of the United States and the State of Rhode Island.

3. Contractors that do not pay benefits by the 20th of the following month that the employee worked shall be a Delinquent Contractor. Delinquent Contractors shall bear the cost for all attorneys' fees, sheriff's fees, accounting, court cost and any other cost involved to collect delinquent payments from an Employer delinquent beyond fifty (50) days following a procedure described below.

   A. A letter from the fund's office to the Employer and the Business Agent.
   B. A call to the Employer from the Business Agent.
   C. A call to the Employer from the Business Agent stating that the men could be removed.
   D. The Union must implement the above steps over a thirty (30) day period from the initial twenty (20) day grace period; i.e., any legal fees or costs incurred in the collection of said delinquent funds will become the responsibility of the offending Employer on the fifty-first (51st day).

## ARTICLE IX

### 21" Century Labor Management Partnership

1. On September 21, 1999, the Labor relations Division of the Rhode Island Chapter of the Associated General Contractors of America, Inc. along with the Plastering Contractors of Rhode Island and several other contractor associations, entered into an Agreement and Declaration of Trust with the Rhode Island Building Trades Council and its constituent member unions to establish the Rhode Island 21" Century Labor Management Partnership. The purpose of the Partnership is to provide Labor Management assistance, research and service to any participating employer of labor organization; improve communication between representatives of Labor and Management; promote and improve harmonious relationships between Labor and Management in the construction industry; cooperate to establish educational programs to educate the members of the labor organizations in methods and means to obtain the goals established by the Fund; study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the construction industry in the State of Rhode Island and to engage in efforts to promote the use of Union construction with owners and users of construction services. The Partnership is funded through hourly contributions paid by the constituent Unions and Employer Associations who belong to the Partnership.

2. Effective January 1, 2000, all employers signatory to this Agreement shall contribute five cents ($.05) for every hour worked by a Local 40 member to the Rhode Island Construction Industry Advancement Fund (RICIAF) which is administered by the Labor Relation Division of the Rhode Island Chapter of the Associated General Contractors of America, Inc. The RICIAF will contribute to the Rhode Island 21" Century Labor Management Partnership all contributions made pursuant to this collective bargaining agreement.

3. The former Article IX "The Settling of Jurisdictional Disputes" will now be renumbered Article X. The former Article X "Tenure" will now be renumbered Article XI.

## ARTICLE X

### The settling of Jurisdictional Disputes

1. It is agreed that the collective bargaining agreement covers all work jurisdiction of the OP&CMIA as presently set forth in its International Constitution under the section dealing with Plasterers and Cement Masons' jurisdiction. The Employer agrees to recognize the jurisdictional clams of the union that have been established by agreements of record with other crafts, awards contained in the green book or as a result of decisions by the National Joint Board for the settlement of Jurisdictional Disputes.

2. The Employer and the Union severally agree to be bound by all terms and provisions of the plan establishing procedures for the resolution of jurisdictional disputes in the Construction Industry (hereinafter referred to as the "Plan"). In particular, the parties agree to abide by those provisions of the Plan requiring compliance with the decision and awards of the Administrator, Arbitrator (s) or the National Arbitration Panels established under the Plan, and to fulfill the obligations of the Employer and the Union, respectively, as set forth in the Plan and under this Agreement.

3. The Union and the Employer shall cooperate to the fullest extent in the settlement of jurisdictional disputes. There shall be no stoppage of work or slow down arising from any jurisdictional dispute.

## ARTICLE XI

### Tenure

This Agreement shall remain in effect until June 6, 2004, and shall continue thereafter from year to year unless either party shall notify the other in writing on or before the first day of April in any year of a desire to terminate this Agreement at its next anniversary date.

It is understood and agreed that any clause or stipulation in this Agreement found to be in violation of the laws of the United States or the State of Rhode Island, or the ordinances of any City or Town, shall be unenforceable only within their respective jurisdictions; provided, however, such clauses or stipulations which shall be unenforceable as herein set forth shall not affect the validity of the remaining conditions in this Agreement, which conditions shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereunto have set their hands and seals by their duly authorized officers and/or agents, the day and year first above written.

CONTRACTING PLASTERERS OPERATING

IN RHODE ISLAND

By ______________________
Chairman

OPERATIVE PLASTERERS AND CEMENT

MASONS INTERNATIONAL ASSOCIATION

LOCAL NO. 40

By ______________________
Business Agent

Royal Drywall & Construction Co.
5254 Alden Street
Fall River, MA. 02723

P.O. Box 4086
Fall River, MA.

By ______________________

**ADDENDUM "A"**

**RECOGNITION AGREEMENT**

O.P.& C.M.I.A. Local 40 of Rhode Island (hereinafter called the "Union") and the Contracting Plasterers of Rhode Island (hereinafter called the "Association") hereby agree as follows.

1. The Union has submitted to the Association evidence of Majority support, and the Association is satisfied that the Union represents a majority of the Association's employees in the bargaining unit described in the current collective bargaining agreement between the Union and the Association.
2. The Association therefore voluntarily agrees to recognize the Union as the exclusive collective bargaining representative for all employees in the contractually described bargaining unit on all present and future jobsites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees' exclusive representative as a result of an NLRB election requested by the employees. The Association agrees that it will not request an NLRB election.
3. The Association and the Union acknowledge that this Recognition Agreement conforms the on-going obligation of both parties to engage in collective bargaining to good faith.

June 19, 2001
Date

[signature]
Union

[signature]
Employer

Royal Drywall & Construction Co. INC
5254 Alden Street
Fall River, MA. 02723

P.O. Box 4086
Fall River, MA.

[signature]
Employer 6-27-01

# EXHIBIT 2

JUN 14 2005

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| PLASTERERS AND CEMENT MASONS LOCAL 40 PENSION FUND, ET. AL. | : | |
| Plaintiffs, | : | |
| v. | : | C.A. No. 04-84L |
| ROYAL DRYWALL & CONSTRUCTION CO., INC. | : | |
| Defendant. | : | |

**AFFIDAVIT OF DONALD LAVIN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Donald Lavin, being first duly sworn, depose and state as follows:

1. That I am Co-Administrator for the Plasterers and Cement Masons Local 40 Pension Fund, Annuity Fund, and Health and Welfare Fund. I am also familiar with the operation and administration of the Apprenticeship Fund.

2. That, from the period of July 2003 through December 2003, Defendant Royal Drywall & Construction Co., Inc. failed to make any contributions to Plaintiff Funds.

3. That Defendant reported to the Funds that members of Plaintiff Plasterers and Cement Masons Local 40 ("union members") had worked the following number of hours for Defendant:

| | |
|---|---|
| July 2003: | 2125 |
| August 2003: | 1843 |
| September 2003: | 1556 |
| October 2003: | 2688 |
| November 2003: | 1295 |
| December 2003: | 119 |

4. That, from the period of July 2003 through December 2003, Defendant deducted $13,337.08 from the paychecks of union members.

5. That Defendant failed to remit to Plaintiff Local 40 any of the monies that it deducted from union members' paychecks from the period July 2003 through December 2003.

6. That, excluding interest, penalties, attorneys' fees, and costs, Defendant does owe Plaintiffs a total balance of $97,634.68 in unpaid contributions and dues as indicated in the Summary of Claim.

7. That the foregoing account is just, true and accurate, and said balance is now due Plaintiffs from Defendant.

8. That no part of the $97,634.68 that is owed has been paid or satisfied.

Donald Lavin

Subscribed and sworn before me on this 10th day of June, 2005.

Notary Public

My commission expires: 9/17/05

# EXHIBIT 3

# SUMMARY OF CLAIM

**Royal Drywall**

| MONTH | DUE DATE | HOURS | RATE | CONTRIB. OWED | INT. RATE | DAYS LATE | INT. OWED | PENALTY 20% | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **Pension** | | | | | |
| Jul. 03 | 8/20/03 | 2125 | $5.00 | $10,625.00 | 4.0% | 653 | $760.34 | $2,125.00 | |
| Aug. 03 | 9/20/03 | 1843 | $5.00 | $9,215.00 | 4.0% | 622 | $628.13 | $1,843.00 | |
| Sept. 03 | 10/20/03 | 1556 | $5.00 | $7,780.00 | 4.0% | 592 | $504.74 | $1,556.00 | |
| Oct. 03 | 11/20/03 | 2688 | $5.00 | $13,440.00 | 4.0% | 561 | $826.28 | $2,688.00 | |
| Nov. 03 | 12/20/03 | 1295 | $5.00 | $6,475.00 | 4.0% | 531 | $376.79 | $1,295.00 | |
| Dec. 03 | 1/20/04 | 119 | $5.00 | $595.00 | 4.0% | 500 | $32.60 | $119.00 | |
| | | | | $48,130.00 | | | $3,128.90 | $9,626.00 | $60,884.90 |
| | | | | **Annuity** | | | | | |
| Jul. 03 | 8/20/03 | 2125 | $2.85 | $6,056.25 | 4.0% | 653 | $433.40 | $1,211.25 | |
| Aug. 03 | 9/20/03 | 1843 | $2.85 | $5,252.55 | 4.0% | 622 | $358.04 | $1,050.51 | |
| Sept. 03 | 10/20/03 | 1556 | $2.85 | $4,434.60 | 4.0% | 592 | $287.70 | $886.92 | |
| Oct. 03 | 11/20/03 | 2688 | $2.85 | $7,660.80 | 4.0% | 561 | $470.98 | $1,532.16 | |
| Nov. 03 | 12/20/03 | 1295 | $2.85 | $3,690.75 | 4.0% | 531 | $214.77 | $738.15 | |
| Dec. 03 | 1/20/04 | 119 | $2.85 | $339.15 | 4.0% | 500 | $18.58 | $67.83 | |
| | | | | $27,434.10 | | | $1,783.47 | $5,486.82 | $34,704.39 |
| | | | | **H & W** | | | | | |
| Jul. 03 | 8/20/03 | 2125 | $5.75 | $12,218.75 | 4.0% | 653 | $874.39 | $2,443.75 | |
| Aug. 03 | 9/20/03 | 1843 | $5.75 | $10,597.25 | 4.0% | 622 | $722.36 | $2,119.45 | |
| Sept. 03 | 10/20/03 | 1556 | $5.75 | $8,947.00 | 4.0% | 592 | $580.45 | $1,789.40 | |
| Oct. 03 | 11/20/03 | 2688 | $5.75 | $15,456.00 | 4.0% | 561 | $950.23 | $3,091.20 | |
| Nov. 03 | 12/20/03 | 1295 | $5.75 | $7,446.25 | 4.0% | 531 | $433.31 | $1,489.25 | |
| Dec. 03 | 1/20/04 | 119 | $5.75 | $684.25 | 4.0% | 500 | $37.49 | $136.85 | |
| | | | | $55,349.50 | | | $3,598.23 | $11,069.90 | $70,017.63 |
| | | | | **Apprenticeship** | | | | | |
| Jul. 03 | 8/20/03 | 2125 | $0.15 | $318.75 | 4.0% | 653 | $22.81 | $63.75 | |
| Aug. 03 | 9/20/03 | 1843 | $0.15 | $276.45 | 4.0% | 622 | $18.84 | $55.29 | |
| Sept. 03 | 10/20/03 | 1556 | $0.15 | $233.40 | 4.0% | 592 | $15.14 | $46.68 | |
| Oct. 03 | 11/20/03 | 2688 | $0.15 | $403.20 | 4.0% | 561 | $24.79 | $80.64 | |
| Nov. 03 | 12/20/03 | 1295 | $0.15 | $194.25 | 4.0% | 531 | $11.30 | $38.85 | |
| Dec. 03 | 1/20/04 | 119 | $0.15 | $17.85 | 4.0% | 500 | $0.98 | $3.57 | |
| | | | | $1,443.90 | | | $93.87 | $288.78 | $1,826.55 |

| MONTH | DUE DATE | HOURS | RATE | CONTRIB. OWED | INT. RATE | DAYS LATE | INT. OWED | PENALTY 20% | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **Industry Advancement Fund** | | | | | |
| Jul. 03 | 8/20/03 | 2125 | $0.05 | $106.25 | 4.0% | 653 | $7.60 | $21.25 | |
| Aug. 03 | 9/20/03 | 1843 | $0.05 | $92.15 | 4.0% | 622 | $6.28 | $18.43 | |
| Sept. 03 | 10/20/03 | 1556 | $0.05 | $77.80 | 4.0% | 592 | $5.05 | $15.56 | |
| Oct. 03 | 11/20/03 | 2688 | $0.05 | $134.40 | 4.0% | 561 | $8.26 | $26.88 | |
| Nov. 03 | 12/20/03 | 1295 | $0.05 | $64.75 | 4.0% | 531 | $3.77 | $12.95 | |
| Dec. 03 | 1/20/04 | 119 | $0.05 | $5.95 | 4.0% | 500 | $0.33 | $1.19 | |
| | | | | $481.30 | | | $31.29 | $96.26 | $608.85 |
| **ERISA** | **Fund** | **SubTotal** | | $132,838.80 | | | $8,635.75 | $26,567.76 | $119,501.11 |
| **AMOUNT** | **PAID** | | | $48,541.20 | | | | | |
| **ERISA** | **Fund** | **Total** | | $84,297.60 | | | | | |
| | | | | **Union Dues**<br>Amt. Deducted | | | | **$50/day** | |
| Jul. 03 | 8/20/03 | 2125 | $1.40 | $2,975.00 | 12.0% | 653 | $638.69 | $31,150.00 | |
| Aug. 03 | 9/20/03 | 1843 | $1.40 | $2,580.20 | 12.0% | 622 | $527.63 | $29,600.00 | |
| Sept. 03 | 10/20/03 | 1556 | $1.40 | $2,178.40 | 12.0% | 592 | $423.98 | $28,100.00 | |
| Oct. 03 | 11/20/03 | 2688 | $1.40 | $3,763.20 | 12.0% | 561 | $694.08 | $26,550.00 | |
| Nov. 03 | 12/20/03 | 1295 | $1.40 | $1,813.00 | 12.0% | 531 | $316.51 | $25,050.00 | |
| Dec. 03 | 1/20/04 | 119 | $1.40 | $166.60 | 12.0% | 500 | $27.39 | $23,500.00 | |
| **Union** | **Dues** | **Total** | | $13,337.19 | | | $2,600.89 | $163,950.00 | $179,888.07 |
| **SubTotal** | | | | $97,634.79 | | | $11,236.64 | $190,517.76 | $299,389.19 |
| **Attorneys** | | **Fees** | | | | | | | $6,657.50 |
| **Costs** | | | | | | | | | $190.00 |
| **TOTAL** | | **OWED** | | | | | | | $306,236.69 |