UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PLASTERERS AND CEMENT MASONS LOCAL 40 PENSION FUND, PLASTERERS AND CEMENT MASONS LOCAL 40 ANNUITY FUND, PLASTERERS AND CEMENT MASONS LOCAL 40 HEALTH AND WELFARE FUND, PLASTERERS AND CEMENT MASONS LOCAL 40 APPRENTICESHIP FUND, AND DONALD LAVIN, in his official capacity as Co-Administrator of the Fund,
Plaintiffs,

v.

ROYAL DRYWALL & CONSTRUCTION CO., INC.
Defendant

v.

O. AHLBORG & SONS, INC.
Third Party Defendant

C.A. No. 04-84L

**AFFIDAVIT OF ANTHONY DEOLIVERIA**

I, Anthony DeOliveria, being first duly sworn, deposes and states as follows:

1. I am the owner of Royal Drywall & Construction Co., Inc. ("Royal Drywall"), the defendant and third-party plaintiff in this matter.

2. Royal Drywall bid on a job for work to be performed at the Jefferson Place Apartments and was successful in being chosen to perform certain drywall work on the Jefferson Place Apartments project as a subcontractor to O. Ahlborg & Sons, Inc. ("Ahlborg"), the general contractor on the job.

3. Royal Drywall performed drywall services at Jefferson Place Apartments pursuant to the subcontract with Ahlborg and Ahlborg paid for such drywall services until approximately July of 2003. (Please see Tab 1).

4. At that time, Ahlborg stopped paying Royal Drywall for the drywall services performed.

5. As a result of Ahlborg's failure to pay Royal, Royal Drywall entered into an agreement with representatives from Ahlborg that Royal Drywall would continue working on the job provided that Ahlborg would pay all costs and expenses associated with keeping union men on the job, including union dues and fees.

6. Anthony Dantuono, the business representative for the Local #40 union, was aware that Ahlborg had agreed to pay such expenses and dues directly to the union on behalf of the union plasterers working on the job. (Please see Tab 1 and Tab 2).

7. In fact, Anthony Dantuono and/or the union sent invoices for union dues and fees directly to Ahlborg and such invoices were paid directly by Ahlborg in July and September of 2003. (Please see Tab 1).

8. Ahlborg paid such dues and expenses for the union plasterers on the JPI job in July of 2003 and September of 2003. Upon information and belief, Ahlborg paid the Local #40 union approximately $140,052.21 in union dues and expenses during that time. (Please see Tab 1).

9. In September of 2003, Ahlborg stopped paying the dues and expenses including to the Plaintiff, as agreed to in July of 2003.

10. When Ahlborg stopped paying the union dues and expenses for the plasterers on the job, Mr. Dantuono had every opportunity to pull the union plasterers off the job when he became aware that Ahlborg had stopped paying the union dues and expenses of the workers.

11. In addition, I advised Mr. Dantuono, and Mr. Dantuono was well aware of the fact that Royal Drywall would not be able to pay the union dues and expenses for the union plasterers on the job because Ahlborg was not paying Royal Drywall for work performed.

12. Mr. Dantuono made the decision to keep the union plasterers on the job knowing that Royal Drywall could not pay the union dues and expenses and that Ahlborg had stopped paying the dues and expenses since September of 2003.

13. I continued to attempt to obtain payment from Ahlborg from October of 2003 through December of 2003 and continued to have conversations with Mr. Dantuono regarding the fact that Ahlborg was not paying the union dues and expenses and that I was unable to do so as Ahlborg was not paying me for work performed.

14. Mr. Dantuono continued to allow the union plasterers to work on the job and refused to remove them from the job until January of 2004.

15. In order to be able to work on the JPI project, I had to sign the union contract.

16. I did not have any legal representation, nor did I obtain any advice with respect to the content of the union contract.

17. The union contract was presented to me on a take it or leave it basis. If I signed it, I could work on the job. If I didn't sign it, I would not get the job.

18. When I signed the union contract, the union did not tell me that if union dues were not paid, that they would seek interest, penalties and attorneys' fees that add up to over three times the amount of the principal amount owed.

19. At no time in September of 2003 or thereafter, when Ahlborg stopped paying the union dues and fees did Mr. Dantuono or any other union representative advise me that the union would seek not only the principal amount, but interest, penalties and attorneys' fees that would add up to over three times the principal amount owed as a result of Ahlborg's failure to pay the union dues.

20. The union had every opportunity to take the men off the job when they knew that Ahlborg refused to pay the fees and expenses associated with union plasterers on the job in September of 2003. Accordingly, it should not be entitled to costs, attorneys' fees and penalties as a result of its failure to take its union plasterers off the job, when it had full opportunity to do so.

21. As outlined in the Third Party Complaint filed against Ahlborg in this case, Ahlborg is responsible for the entire amount owed to the union in this matter.

[signature]
Anthony DeOliveria

Date: July 26, 2005

STATE OF Rhode Island
COUNTY OF Providence

Sworn to and subscribed before me notary public, this 26th day of July, 2005.

[signature]
Notary Public
My Commission Expires: 12/31/07